

FILED

**February 7, 2018**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 12:41 P.M.

### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Mattie Mitchell, | )   Docket No. 2016-08-1131 |
| as representative for the Estate of | ) |
| Michael Mitchell | )   State File No. 92588-2015 |
| | ) |
| v. | ) |
| | ) |
| Bunge North America, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Deana C. Seymour, Judge | ) |

---

### Vacated and Remanded – Filed February 7, 2018

---

In this claim for death benefits, the employee's surviving spouse asserted that the employee's heart attack arose primarily out of and in the course and scope of his employment. The employer filed a motion for summary judgment, asserting the surviving spouse could not "establish that the heart attack arose primarily from [the] employment considering all factors." In response, the surviving spouse submitted expert medical opinions from two physicians, as well as deposition testimony from multiple other witnesses. The trial court denied the employer's motion for summary judgment, concluding there were genuine issues of material fact "regarding each theory raised by [the surviving spouse]." Upon careful consideration of the record, we conclude the trial court did not sufficiently state the legal grounds for its decision to deny the motion consistent with the requirements of Rule 56.04 of the Tennessee Rules of Civil Procedure. We therefore vacate the order and remand the case for additional findings by the trial court.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

S. Newton Anderson, Memphis, Tennessee, for the employer-appellant, Bunge North America

Julian T. Bolton, Memphis, Tennessee, for the employee-appellee, Mattie Mitchell, as representative for the Estate of Michael Mitchell

**Factual and Procedural Background**

Michael Earl Mitchell ("Employee") worked for thirty-four years at Bunge North America ("Employer"), an agricultural business.[1]  He spent approximately ten years prior to his death working as a superintendent.  During harvest season, Employee was required to work longer hours, sometimes twelve hours a day, seven days a week.  On November 1, 2015, while at work in the "scale office," Employee suffered a fatal heart attack.  The parties dispute the extent, duration, and intensity of Employee's physical activities on the day of his heart attack.  Employer maintained that Employee did not engage in any strenuous activity on the day of the heart attack, but had "an easy laid back day."  The surviving spouse responded that Employee was "the only superintendent on site" that day and he had been "all over the place that day."  She further alleged that Employee was "really stressed out" about a computer program he was having difficulty learning.

Following Employee's death, the surviving spouse requested a private autopsy to verify the cause of death.  The autopsy findings of Dr. Thomas Deering indicated Employee had suffered from "extensive cardiac disease with prior stent placement," as well as "hypertension and a remote muscle injury of the thigh."  Dr. Deering also found evidence of aortic atherosclerosis and "pulmonary edema of the lungs," which he associated with the heart disease.  Employee also suffered from mild pulmonary emphysema.  The autopsy did not reveal a work-related lung disease.  Dr. Deering concluded that "the cause of death is atherosclerotic and hypertensive cardiovascular disease."  He further noted that "[c]ontributing to the death is pulmonary emphysema" and that "the manner of death is natural."

Employee also obtained expert medical opinions from two board-certified cardiologists, Dr. Joseph Weinstein and Dr. Jesse McGhee.  Dr. Weinstein, Employee's treating cardiologist prior to his death, performed a records review.  In his June 14, 2017 report, Dr. Weinstein noted "increased workload" and "stress in the workplace," and he concluded that "because his death occurred at work, his myocardial infarction and subsequent death were work related."  In his subsequent deposition, Dr. Weinstein opined that stress "increases your blood pressure" and "can lead to something called plaque rupture, which we feel in the majority of instances is how a heart attack occurs."

On cross-examination, Dr. Weinstein admitted that Employee suffered from a number of pre-existing medical conditions unrelated to his work, including obesity, a history of tobacco use, coronary atherosclerosis, left ventricular dysfunction, and hyperlipidemia.  When asked about work-related stressors, Dr. Weinstein testified that he would describe those as "contributing" but not necessarily "precipitating" causes of

---

[1] There was no in-person evidentiary hearing in this case.  We have gleaned the facts from multiple statements of undisputed facts filed by the parties, deposition transcripts, pleadings, exhibits, and the trial court's order.

Employee's heart attack. Finally, Dr. Weinstein admitted he was unaware of any "acute sudden or unexpected event" on the day of the heart attack.

Employee then submitted the expert medical opinion of Dr. McGee, who also performed a records review. In his November 8, 2016 report, Dr. McGee described Employee's physical stress and environmental conditions at work as "a primary contributor" to his death. In his deposition, Dr. McGee noted that Employee suffered from "physical and emotional stress on his job." He also opined that this work-related stress was a "significant contributing factor" to the heart attack. He testified that "[s]omething happened that stressed him out, and when you become stressed, your heart rate and your blood pressure can go up and that certainly can contribute to a plaque rupture." This led to his conclusion that "[Employee's] physical, environmental, and emotional stress related to his employment over time contributed [to] and aggravated his coronary atherosclerotic heart disease."

On cross-examination, Dr. McGee admitted it was not possible to tell from the autopsy findings whether Employee's heart attack was caused by acute or chronic factors. He further admitted he was unaware of any specific acute event that occurred on the day of Employee's death. Finally, he agreed that when he described in his report Employee's physical stress and environmental conditions at work as "a primary contributor" to his death, he was referring to "long term exposure . . . over years" to such conditions, and not any acute event.

Employer filed a motion for summary judgment and relied, in part, on the expert medical opinion of Dr. Keith Anderson. In Dr. Anderson's May 8, 2017 report, he concluded that "exposure to grain dust" and "emotional stress" at work "did not contribute to the development of atherosclerotic heart disease or the progression of this disease." He further opined that "there is no relationship between grain dust exposure or between chronic work stress and his myocardial infarction." Because there was "no identifiable activity preceding this event which could be identified as a trigger for his myocardial infarction," Dr. Anderson concluded that "[t]o a reasonable degree of medical certainty, [Employee's] employment had no causal relationship to his death."

In its order denying Employer's motion for summary judgment, the trial court noted three distinct theories posited by the surviving spouse as the cause of Employee's heart attack and death: (1) work-related exertion; (2) inhalation exposure to grain dust; and (3) work-related stress. The trial court reviewed lay testimony concerning Employee's physical activities in the days before his heart attack and commented that the medical experts offered differing opinions as to the cause of Employee's heart attack and death. The trial court then concluded there were "genuine issues of material fact regarding each theory raised by [the surviving spouse]" and determined "summary judgment is improper at this time." Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2017). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2017). Finally, a trial court's ruling on a motion for summary judgment is reviewed *de novo* with no presumption of correctness. *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 895 (Tenn. 2016) ("[W]e make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied.").

## Analysis

The Workers' Compensation Law defines "injury" and "personal injury" to mean "an injury by accident, a mental injury, occupational disease *including diseases of the heart*, lung and hypertension, . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee." Tenn. Code Ann. § 50-6-102(14) (2017) (emphasis added). An injury arises primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D).

When a party who does not bear the burden of proof at trial files a motion for summary judgment, it must do one of two things to prevail on its motion: (1) "[s]ubmit[] affirmative evidence that negates an essential element of the nonmoving party's claim" or

(2) "[d]emonstrate[] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Tenn. Code Ann. § 20-16-101 (2017); *see also Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). If the moving party is successful in meeting this initial burden of production, the nonmoving party must then establish that the record contains specific facts upon which a trier of fact could base a decision in that party's favor. *Rye*, 477 S.W.3d at 265. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In considering such a motion, "[t]he trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling." *Id.*

Before addressing the merits of this appeal and the trial court's decision to deny Employer's motion for summary judgment, we must consider whether the trial judge's order met the requirements of Rule 56.04. This issue was addressed by the Tennessee Supreme Court in *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303 (Tenn. 2014). In *Smith*, a healthcare liability case, the trial court granted the defendant's motions for summary judgment at the conclusion of a hearing and directed "the [d]efendant to prepare the order and establish the rationale for the [c]ourt's ruling in quite specific detail." *Id.* at 311. On appeal, the Supreme Court addressed a trial court's obligations when ruling on a motion for summary judgment in light of the most recent amendments to Rule 56:

> The changes to Tenn. R. Civ. P. 56.04 were intended to address two concerns. First, they reflect the growing awareness of both the Advisory Commission and this Court that explanations of the basis for judicial decisions promote respect for and acceptance of not only the particular decision but also for the legal system. Second, skeletal orders containing no explanation of the reasons for granting [or denying] the summary judgment were complicating the ability of the appellate courts to review the trial court's decision. *See, e.g.*, *Church v. Perales*, 39 S.W.3d 149, 157 (Tenn. Ct. App. 2000) (noting that skeletal orders lacking a statement of grounds required appellate courts to "perform the equivalent of an archeological dig [to] endeavor to reconstruct the probable basis for the [trial] court's decision").

*Id.* at 313-14 (alterations in original). The Court then concluded, "in the future, the resolution of issues relating to a trial court's compliance or lack of compliance with Tenn. R. Civ. P. 56.04 should also take into consideration the fundamental importance of assuring that a trial court's decision either to grant or deny a summary judgment is adequately explained . . . ." *Id.* at 314.

This directive from the Supreme Court was applied in *Potter's Shopping Center, Inc. v. Szekely*, 461 S.W.3d 68 (Tenn. Ct. App. 2014). In *Potter's Shopping Center*, a construction contract case, the trial court granted the plaintiff's motion for summary judgment as to the issue of liability, but denied the motion as to the issue of damages. *Id.* at 70. On appeal, the Court of Appeals analyzed the Supreme Court's decision in *Smith* and concluded as follows with respect to the trial court's order in response to the motion for summary judgment:

> The order does not state the legal grounds for the grant of summary judgment. The trial court did not recite any evidence or argument it considered in making the decision to grant summary judgment. This practice does not comply with Rule 56.04. . . . The parties' summary judgment filings indicate the existence of several disputed facts. . . . We cannot, based on the record before us, determine whether the trial court found these disputes immaterial to [the] unjust enrichment claim.

*Id.* at 72. As a result, the Court of Appeals vacated the grant of partial summary judgment and remanded the case. *Id.*

In the present case, the trial court's order denying the motion for summary judgment summarized the facts of the case, the respective positions of the parties, and the opinions expressed by the experts. In its ruling, however, the trial court merely stated, "[t]he Court finds genuine issues of material fact regarding each theory raised by [the surviving spouse] and holds summary judgment is improper at this time." We conclude this statement is insufficient to meet the requirements of Rule 56.04, especially in light of the Supreme Court's admonitions in *Smith*. The order does not identify any particular disputed facts the court found to be material to the distinctly different theories asserted by the surviving spouse, nor does it explain a legal basis for its decision to deny the motion, leaving it up to the parties and to us to infer the basis for the court's determination. As such, we vacate the trial court's order and remand the case for additional findings supporting its decision in accordance with Rule 56.04.

## Conclusion

In light of the foregoing, the trial court's order is vacated and the case is remanded for additional findings based upon the motion previously filed and argued.

**FILED**

**February 7, 2018**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:41 P.M.**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Mattie Mitchell, | ) | Docket No.   2016-08-1131 |
| as representative for the Estate of | ) | |
| Michael Mitchell | ) | State File No.  92588-2015 |
| | ) | |
| v. | ) | |
| | ) | |
| Bunge North America, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 7th day of February, 2018.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Julian T. Bolton | | | | | X | bolllaw@aol.com |
| S. Newton Anderson | | | | | X | sna@spicerfirm.com |
| Deana C. Seymour, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov